## THE ORANGE.[1]

### NEW YORK CENT. & H. R. R. CO. v. THE ORANGE.

#### (District Court, S. D. New York. July 21, 1892.)

COLLISION — STEAM VESSELS CROSSING — RULE 23 — DUTY OF PRIVILEGED VESSEL — CONTRARY SIGNAL — CHANGE OF COURSE.

A tug was crossing the North river from Hoboken to New York, and heading a little above the New York slip of the ferryboat O. The O. left her slip, and, when some distance out in the river, gave two whistles to the tug. The evidence for the ferryboat was that, at the time when the signal was given, the ferryboat was heading nearly across the river, and had the tug well on her starboard hand. The tug's pilot testified that, when the whistles were given, the ferryboat was a little on his port bow, swinging up stream, so that he thought her signal was a mistake for one whistle, whereupon he answered with one, and ported his helm. The vessels almost immediately came in collision, the tug being struck on her port side and sunk. *Held*, on the evidence, that the ferryboat's signal was proper under the circumstances, and the tug was bound, under rule 23, to do nothing to thwart her maneuver, and hence was in fault for her contrary signal, and for changing her course to starboard; that the ferryboat, having stopped and reversed on hearing the contrary signal from the tug, and thus having done all she could do to avoid the collision, was not in fault therefor.

In Admiralty. Libel for collision.

Carpenter & Mosher, for libelant.

Leon Abbett, Jr., for claimant.

BROWN, District Judge. The above libel was filed to recover damages for injuries to the libelant's tugboat No. 3, sustained in a collision with the ferryboat Orange, a little before 2 p. m. of December 30, 1891, about 800 or 1,000 feet off the ferry slip at the foot of Barclay street, New York. The tug was unincumbered and bound from Hoboken for the libelant's docks a little above the Barclay street slip. She had come down the North river as far as Pavonia ferry, keeping a short distance from the Jersey shore, and then made across the river, heading, as the pilot says, for about the Courtlandt street ferry, though I am not satisfied of the accuracy of this statement. When on this course, and a considerable distance off from the Chambers street pier, she observed the ferryboat Orange, bound from Barclay street to Hoboken, coming out of her slip, and got from her a signal of two whistles, indicating that she would go to the westward of the tug. The pilot of the tug, considering the course of the Orange unusual in the situation, and in the very high northwest wind and strong tide, answered with one whistle and ported his helm. In about 45 seconds afterwards the boats were in collision, the stem of the ferryboat striking the tug at nearly right angles a little aft of amidships on her port side, and damaging her so that she sank.

The most important difference in the testimony is in regard to the heading of the two boats at the time the contrary signals were

[1] Decree affirmed by the circuit court of appeals, without opinion, (June 7, 1894), upon opinion of district judge.

exchanged. The pilot of the tug testifies that the ferryboat was at that time a little on his port bow, swinging to the northward and eastward, and heading pretty nearly up river, so that he supposed her two whistles to have been given by mistake for one whistle. The claimant's witnesses contend that the Orange, when she gave her signal of two whistles, was heading nearly across the river, having the tug well on her own starboard hand, and seeing the tug's starboard side.

The disinterested witnesses, including the libelant's witness Wilson, pilot of the Cyclops, seem to me to confirm the claimant's account rather than that of the libelant. The weight of testimony is with the respondent, so far at least as that the ferryboat at the time of exchanging the whistles was heading well over towards the Jersey shore, and pointing not above Pavonia ferry. The ferryboat must, therefore, have been heading at least four points across the river, and could not have been heading, as the pilot of the tug testifies, for his port quarter. If the situation was such as the pilot of the tug describes, it seems to me impossible that the collision could have happened. For he immediately ported his wheel and continued it so until within 100 or 200 feet of the ferryboat. He was going through the water at the full speed of 10 knots, besides a three-knot ebb tide, and he changed his course nearly eight points. Had the Orange been heading as he says she was, she must have passed well clear of him to the eastward.

1. In the position which the weight of evidence establishes, namely, that at the time the signals were exchanged, the tug was well on the starboard bow of the ferryboat, it follows, whether the ferryboat was nearly directly ahead of the tug, as the libelant claims, or on her starboard hand, as the respondent's witnesses allege, that the two whistles of the ferryboat in such a wind and tide were a correct and proper signal for her to give; and that the tug, if she did not keep any more to port in order to assist the ferryboat's maneuver, was at least bound under rule 23 to do nothing to thwart or embarrass it by giving a contrary signal, or by changing her course to starboard. The tug was light, unincumbered, and easily handled; she could move rapidly in any direction; and I must, therefore, hold her in fault for her contrary signal, and for her change of course and thwarting maneuver without justification. For the change of course was so great as to show that but for that change no collision would have happened.

2. It is contended that the ferryboat was in fault because, as it is said, she did not stop and reverse. The witnesses for the tug are mistaken on this point. The proof is undoubted that the ferryboat did stop and reverse immediately upon hearing the contrary signal from the tug. The pilot of the Cyclops says that she slowed, but he did not think she reversed. The time that elapsed between the signal of the tug and the collision was so short that but little reversal was possible. The boats were approaching each other at the rate of about 14 miles an hour, or 1,400 feet per minute; and as they were distant only about 900 or 1,000 feet when the whistles were exchanged, the time between the signals and collision would be but about 45 seconds. The

engineer of the ferryboat testifies that he got part of a turn backwards. In so short an interval I cannot find any substantial delay, or any neglect to reverse promptly. The collision arose, I think, wholly from the misapprehension of the pilot of the tug as to the expected course of the ferryboat; from his mistake in giving a contrary signal, and from his change of course to starboard. Manifestly except for this, no collision would have occurred. As the ferryboat had no reason to anticipate this course by the tug, and the moment it was perceived did all she could to avert the consequences of it, I must hold her without fault, and direct a dismissal of the libel, with costs.